IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-00533-PSF-BNB

BRIAN KENT HASTINGS,

Applicant,

v.

JOE ORTIZ, C.D.O.C. Superintendent, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO

Respondents.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** (the "Application"), filed by Brian Kent Hastings (the "petitioner") on March 22, 2005. The respondents filed an Answer to Application for Writ of Habeas Corpus (the "Answer") on April 26, 2005. For the following reasons, I respectfully RECOMMEND that the Application be DENIED.

**I.  THE LAW**

This Court may review the petitioner's application for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). An application cannot be granted unless it appears that the petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b)(1).

If a petitioner exhausts his available state remedies, his application may be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Factual determinations made by the state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Generally, if a petitioner fails to exhaust available state remedies, a federal court should dismiss the application without prejudice so that the state remedies may be pursued. Demarest v. Price, 130 F.3d 922, 939 (10th Cir. 1997). The federal court, however, should first consider whether the petitioner would be able to raise the unexhausted claims in the state court. Id.

If the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the petitioner's claims are procedurally defaulted for purposes of federal habeas corpus relief. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). The federal court may not consider issues raised in a habeas corpus petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. 722, 750 (1991). The determination of cause, prejudice, and fundamental miscarriage of justice are matters of federal law. Demarest, 130 F.3d at 941.

## II.  BACKGROUND

The background facts of this case are described by the Colorado Court of Appeals as follows:

> Defendant, an inmate in the segregation unit of the Crowley County correctional facility, was charged by information with three habitual counts and second degree assault for allegedly throwing urine on a correctional officer (victim). Although defendant was initially represented by appointed counsel, the court granted defendant's request to proceed pro se at trial. Following a jury trial, defendant was convicted of second degree assault. New counsel was later appointed, and defendant was represented with regard to disposition of the habitual criminal charges and sentencing.
>
> In accordance with a sentence agreement, the People dismissed the habitual criminal counts, defendant waived his right to appeal the assault conviction, and he was sentenced to twelve years in the Department of Corrections (DOC).
>
> Defendant did not pursue a direct appeal but filed a Crim. P. 35(c) motion for postconviction relief. The trial court denied the motion.

*Answer*, Appendix D, p. 1.

The Colorado Court of Appeals upheld the trial court's denial of the petitioner's post-conviction motion. Id. at p. 8. The petitioner filed a Petition for Writ of Certiorari, which was denied on January 24, 2005.

The petitioner filed his Application on March 22, 2005. The respondents concede that the Application is timely. The Application asserts the following claims:

(1) the judicial branch violated the doctrine of separation of powers by enacting a four-part test governing the destruction of evidence that circumvents a state statute governing the destruction of evidence;

3

      (2)   the state statute under which the petitioner was convicted is unconstitutionally overbroad;

      (3)   the petitioner was subjected to torture and corporal punishment while housed at the Crowley County Correctional Facility ("CCCF"), the commanding officers perjured themselves when they denied such actions at trial, and the trial court did not give deference to documents that were relevant to the actions;

      (4)   the government failed to provide discovery in violation of the petitioner's rights to due process and equal protection;

      (5)   the government failed to advise the petitioner of all charges at the earliest possible time in violation of his rights to due process and equal protection;

      (6)   the prosecution and law enforcement officials destroyed evidence in violation of the petitioner's rights to due process, equal protection, and a fair trial;

      (7)   trial counsel rendered ineffective assistance because he failed to (a) seek dismissal of the trial on double jeopardy grounds because the petitioner had previously undergone a disciplinary proceeding for the same conduct; (b) request that the jury conduct a test of the evidence; (c) consult with the petitioner; (d) enforce the petitioner's right under the Uniform Mandatory Disposition of Detainers Act ("UMDDA"); (e) obtain rulings on discovery motions; (f) obtain a forensic scientist to opine on tests that could have been performed on the victim's clothing; (g) compel the attendance of witnesses that the petitioner disclosed to counsel; and (h) obtain transcripts of prior testimony of prosecution witnesses;

      (8)   the evidence was insufficient to support the petitioner's conviction in violation of his rights to due process and equal protection;

(9)  the trial court denied the petitioner's access to transcripts of prior testimony of prosecution witnesses in violation of the petitioner's rights to due process and equal protection;

(10)  the trial court prevented the petitioner from compelling the attendance of witnesses at trial in violation of his rights to due process and equal protection;

(11)  the government denied the petitioner his right to a speedy trial pursuant to the UMDDA;

(12)  the prosecution and its witnesses committed perjury in violation of the petitioner's rights to a fair trial, due process, and equal protection;

(13)  sentencing counsel rendered ineffective assistance when he (a) advised the petitioner to accept the sentence agreement in exchange for waiving a claim pursuant to Brady v. Maryland, 373 U.S. 83 (1963);[1] (b) coerced the petitioner to accept the agreement by misinforming him of the possible sentence; and (c) failed to seek appellate review of the sentence agreement; and

(14)  the sentence agreement violates the petitioner's rights to a fair trial and his rights under the Due Process and Equal Protection clauses because exculpatory evidence was destroyed in violation of Brady.

### III.   ANALYSIS

#### A.   Claim Fourteen

Claim Fourteen alleges that the sentence agreement violates the petitioner's due process and equal protection rights and his right to a fair trial because exculpatory evidence was destroyed in violation of Brady. The petitioner argues that he can assert this claim in spite of the terms of

---

[1]Brady holds that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87.

his sentencing agreement wherein he waived his right to direct appeal and post-conviction relief because "[t]he courts have consistently held that a defendant can challenge any agreement that results in a conviction where the government has withheld and/or destroyed material evidence (Brady evidence) since such agreement is not voluntary or intelligent." The petitioner cites White v. United States, 858 F.2d 416, 422 (8th Cir. 1988), to support his argument.

In White, the Eighth Circuit Court of Appeals held that a collateral attack on a guilty plea is not automatically precluded where the petitioner claims a Brady violation and where the suppressed evidence was unavailable to aid the petitioner and his counsel in evaluating the chance for success at trial. Id. at 421-22. The Tenth Circuit Court of Appeals, citing White, has held:

> [A] defendant who has pleaded guilty may thereafter only challenge the voluntariness of his plea. United States v. Broce, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989). Nevertheless, pleading guilty does not preclude a defendant from claiming that his plea was the product of prosecutorial "threats, misrepresentations, or improper promises." Bradbury v. Wainwright, 658 F.2d 1083, 1086 (5th Cir.1981), cert. denied, 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982); see also Crow v. United States, 397 F.2d 284, 285 (10th Cir.1968). Such claims directly challenge the voluntary and intelligent nature of the plea. Bradbury, 658 F.2d at 1086.
>
> In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." 373 U.S. at 87, 83 S.Ct. at 1196. In Giglio, the Court extended its holding in Brady to include evidence affecting the credibility of the government's witnesses. 405 U.S. at 154, 92 S.Ct. at 766. "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." Id. (quoting Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)). And in United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court reaffirmed its holdings in Brady and Giglio, stating that the Brady rule extends

to "[i]mpeachment evidence ⋯ as well as exculpatory evidence [because] ⋯ if disclosed and used effectively, [impeachment evidence] may make the difference between conviction and acquittal." Bagley, 473 U.S. at 676, 105 S.Ct. at 3380.

This court has yet to address whether a defendant who has pleaded guilty can raise a Brady or Giglio claim in his section 2255 petition. The central question is whether the withholding of material evidence could taint a criminal proceeding so substantially that the defendant's decision to plead guilty could not fairly be called knowing and intelligent. Most courts have held that defendants who have pleaded guilty are not barred from raising Brady claims in their petitions for post-conviction relief. See, e.g., White v. United States, 858 F.2d 416, 422 (8th Cir.1988) (the Supreme Court's guilty plea cases "do[ ] not preclude a collateral attack upon a guilty plea based on a claimed Brady violation"), cert. denied,489 U.S. 1029, 109 S.Ct. 1163, 103 L.Ed.2d 221 (1989); Campbell v. Marshall, 769 F.2d 314, 321 (6th Cir.1985) (entertaining defendant's Brady claim on the grounds that the Supreme Court's guilty plea cases "did not intend to insulate all misconduct of constitutional proportions from judicial scrutiny solely because that misconduct was followed by a plea which otherwise passes as knowing and intelligent"), cert. denied,475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 576 (1986); Fambo v. Smith, 433 F.Supp. 590, 598-99 (W.D.N.Y.), aff'd,565 F.2d 233 (2d Cir.1977) (per curiam). But see Smith v. United States, 876 F.2d 655, 657 (8th Cir.) (holding that, by pleading guilty, defendant waived claim that government failed to disclose favorable evidence), cert. denied,493 U.S. 869, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989); United States v. Ayala, 690 F.Supp. 1014, 1016 (S.D.Fla.1988) (stating that a Brady violation does "not affect the consensual nature of the plea thereby impairing its validity").

The Supreme Court has often reiterated that a defendant's guilty plea must be knowing and intelligent to be a constitutional basis for conviction. As the Court stated in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), a guilty plea

> is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial-a waiver of his right to trial before a jury or judge. Waivers of constitutional rights not only must be voluntary but must be

7

> knowing, intelligent acts done with sufficient
> awareness of the relevant circumstances and likely
> consequences.

Id. at 748, 90 S.Ct. at 1468; see also Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) (although "a guilty plea represents a break in the chain of events which has preceded it in the criminal process," a defendant may subsequently challenge the "intelligent character" of his plea); McMann v. Richardson, 397 U.S. 759, 766, 90 S.Ct. 1441, 1446, 25 L.Ed.2d 763 (1970) (a guilty plea is "a waiver of trial" and therefore "must be an intelligent act 'done with sufficient awareness of the relevant circumstances and likely consequences' ") (quoting Brady v. United States, 397 U.S. at 748, 90 S.Ct. at 1468).  This court's decisions have also emphasized that a defendant's guilty plea must be entered knowingly. See, e.g., United States v. Gomez-Cuevas, 917 F.2d 1521, 1524 (10th Cir.1990) ("A defendant's guilty plea must be knowing and voluntary."); Bradbury, 658 F.2d at 1086 ("Since a guilty plea is a waiver of trial, it must be an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.") (internal quotations omitted).

In light of these decisions, as well as the importance to the integrity of our criminal justice system that guilty pleas be knowing and intelligent, we hold that, under certain limited circumstances, the prosecution's violation of Brady can render a defendant's plea involuntary. As the court stated in Fambo,

> [w]ithout [the clearly exculpatory] evidence before
> it, the trial court which accepted the plea could not,
> in fact, satisfy itself in any meaningful sense that
> petitioner's guilty plea was voluntarily and
> intelligently made by an informed defendant with
> adequate advice of counsel, and that there was
> nothing to question the accuracy and reliability of
> this defendant's admission that he had committed the
> crime with which he had been charged.

433 F.Supp. at 599.  Thus, a defendant who has pleaded guilty is not automatically barred from claiming in his section 2255 petition that the prosecution withheld material evidence. Of course, even if a Brady violation is established, "habeas relief would clearly be the

8

>   exception." White, 858 F.2d at 422.

United States v. Wright, 43 F.3d 491, 495-96 (10th Cir. 1994).

Therefore, under limited circumstances, the prosecution's violation of Brady can render a defendant's plea involuntary, and as a result, the defendant may challenge his guilty plea in a habeas petition.

The Colorado Court of Appeals addressed the substance of Claim Fourteen as follows:

>   Defendant also contends that his consent to the sentence agreement was involuntary because exculpatory evidence had been destroyed in violation of Brady v. Maryland, supra. We disagree.
>
>   A defendant's decision to plead guilty is commonly influenced by his appraisal of the prosecution's case and information that may be available to cast doubt on the fact or degree of his culpability. Consequently, even a guilty plea that was "knowing" and "intelligent" may be vulnerable to challenge if it was entered without knowledge of material evidence withheld by the prosecution.
>
>   Here, defendant did not plead guilty. He entered into a sentence agreement after a jury convicted him.
>
>   Defendant was charged with throwing urine at a prison guard. Defendant alleges that the DOC washed the uniform and, thereby, intentionally destroyed evidence that would have shown that he did not throw anything at the victim.
>
>   During a hearing on pretrial motions a week before trial, defendant's counsel presented evidence and argument regarding the alleged destruction of evidence. The trial court denied the motion to suppress.
>
>   At trial, the victim testified that defendant threw liquid at him and that his uniform became wet and smelled like urine. Another witness also testified that , shortly after the incident, the victim's uniform was wet and smelled like urine. Except for his own uncorroborated assertion that he had not thrown anything at the victim, defendant presented no evidence upon which the Crim. P.

35(c) court could have concluded that the uniform had been washed in bad faith or that it had apparent exculpatory value when it was washed.

Neither party has provided this court with the copy of the sentence agreement. However, at the sentencing hearing, the following colloquy occurred:

> The Court: Now, Mr. Hastings, in your own words, by waiving your rights to appeal, what is [sic] that you are doing?
>
> The Defendant: Not allowing the filing of any kind of attack any 35(a), (b), or (c).
>
> The Court: Do you understand that you're not going to ask the Court of Appeals to review the trial proceedings conducted in this case?
>
> The Defendant: Yes.

After finding that defendant had voluntarily entered into the sentence agreement, the court sentenced defendant to twelve years in the DOC.

In addition, the Crim. P. 35(c) court found that:

> During the June 12, 2000, hearing concerning the parties' plea agreement, the defendant voluntary [sic], knowingly, intelligently, and intentionally (a) waived his right to appellate review of all pretrial proceedings . . . (b) waived his right to seek review under Crim. P. 35 . . . (c) either waived, withdrew, or abandoned any and all motions filed but unresolved . . . and (d) waived his rights to speedy trial and speedy disposition of detainer . . . .

Defendant does not dispute the trial court findings.

Because defendant did not plead guilty but entered into a sentence agreement and waived his right to appeal the jury conviction, because he did so with knowledge that the uniform had been laundered and that this prevented him from conducting tests that

> might have supported his contention that he had not committed the crime, and because defendant accepted the sentence agreement with knowledge that his motion to suppress had been denied, we conclude that the Crim. P. 35(c) court properly found that his consent to the sentence agreement, including his waiver of his appellate rights, was voluntary, knowing, and intelligent.

*Answer*, Appendix D, pp. 5-7.

The Colorado Court of Appeals correctly recognized that the White holding does not apply to the petitioner because he did not enter a guilty plea; he entered into a sentence agreement after his Brady challenge was considered and denied by the trial court and after he was found guilty by a jury. I find that the state appellate court's determination of Claim Fourteen is not contrary to, nor does it involve an unreasonable application of federal law. Further, I find that the state appellate court's resolution of this claim does not involve an unreasonable determination of the facts. As a result, this claim should be denied. See 28 U.S.C. § 2254(d).

### A. Claim Thirteen

Claim Thirteen alleges that the petitioner's sentencing counsel rendered ineffective assistance when he (a) advised the petitioner to accept the sentence agreement in exchange for waiving a claim pursuant to Brady v. Maryland, 373 U.S. 83 (1963); (b) coerced the petitioner to accept the agreement by misinforming him of the possible sentence; and (c) failed to seek appellate review of the sentence agreement.

The applicable federal law on this issue is clearly established. When reviewing a claim for ineffective assistance of counsel, the court starts with the presumption that counsel's conduct was constitutionally effective. Strickland v. Washington, 466 U.S. 668, 690 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. To prevail on a claim for

ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient or, in other words, "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687-88, 694.

> **1. Ineffective Assistance Based on Sentencing Counsel's Advice to Accept the Sentence Agreement in Exchange for Waiving a Claim Pursuant to <u>Brady</u> and on Sentencing Counsel's Coercion to Accept the Sentence Agreement by Misinforming the Petitioner of the Possible Sentence**

The petitioner presented these claims to the state appellate court as follows:

> Counsel failed to provide effective assistance of counsel by advising the appellant to take a 12 year negotiated sentence to prison that was offered before he took the case after jury trial, which included to waive the direct appeal. . . This is based on the fact counsel had not yet reviewed the prior proceedings before he took the case - especially the dilibrate [sic] destruction of all alleged Brady evidence solely by the prosecutor and its agents, which denied the appellant to a [sic] fair trial on the merits of the truth of the case that the courts prefer.
>
> ***
>
> Any waiver of Brady evidence pursuant to a plea negotiation can't be deemed intelligent & voluntary if entered into without the material information withheld or destroyed by the prosecution & his agents. This is based on the fact that if a defendant may not raise a Brady claim after plea negotiations prosecutors & it's [sic] agents will withhold Brady evidence deliberately to elicit pleas from innocent defendants to close cases not solved. Due process clause of the state & federal consts. require that a defendants [sic] right to receive Brady evidence can't be waived in any way and any waiver is invalid.
>
> ***
>
> Counsel & the appellant were in agreement not to take the 12 year deal to waive the direct appeal with Brady claims until June 12, 2000 when appellant's counsel used coercion by belying the situation telling the appellant that he would receive 72 years - Life in prison when in reality the appellant was only looking at a class 4 felony of 2-6 years (x) 3-4 = a 18-24 year prison sentence pursuant to the habitual criminal statute.

*Answer*, Appendix A, pp. 23-25 (citations omitted).

The appellate court upheld the trial court's denial of these claims:

> Defendant does not dispute that the sentence agreement included a waiver of his right to direct appeal and postconviction relief under Crim. P. 35. However, he contends that the trial court erred when it denied his claim that his postconviction counsel, who advised him regarding the agreement, was ineffective. We disagree.
>
> To prevail on a claim of ineffective assistance of counsel, a defendant must establish (1) that counsel's performance was deficient in that it fell below the level of reasonably competent assistance; and (2) that the deficient performance prejudiced the defense, resulting in a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.
>
> There is a strong presumption that an attorney's conduct falls within the wide range of reasonably competent assistance.
>
> Because a presumption of validity attaches to a judgment of conviction, the burden is on the defendant to prove both elements of his ineffective assistance claim by a preponderance of the evidence. If a defendant fails to prove either the deficient performance or the prejudice element of the claim, the trial court may reject it on that basis alone.
>
> Defendant first alleges that, even before his postconviction counsel accepted his case and reviewed the trial proceedings, he advised him to agree to the sentence agreement, including the waiver of appeal. He contends that, because the deliberate destruction of evidence violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), counsel's conduct constituted ineffective assistance. We are not persuaded.
>
> In his opening brief, defendant plainly acknowledges that he and his counsel discussed the fact that the waiver of direct appeal would affect his Brady claims.
>
> In addition, defendant refers to a letter from his postconviction counsel to the deputy district attorney. . . .

13

> The letter is dated nine days before the hearing at which defendant consented to the agreement. It explicitly addresses the <u>Brady</u> issue and defendant's desire to appeal the trial court's denial of that motion. In the letter, defendant's counsel argues that the sentence agreement should limit confinement to eight years.
>
> Defendant did not present any other evidence to the Crim. P. 35(c) court that would show that his postconviction counsel's conduct was below the level of reasonably competent assistance.
>
> We conclude that the record and defendant's submission on appeal do not support his contention that his postconviction counsel failed to adequately consider the DOC destruction of evidence or failed to advise him regarding the effect of the sentence agreement and waiver on his ability to appeal that issue.
>
> Defendant also argues that postconviction counsel was ineffective because he coerced defendant into accepting the sentence agreement by lying about the possible length of the sentence in the absence of an agreement. We disagree.
>
> Here, the record shows that the trial court explained the sentence agreement and its consequences in detail and that defendant understood that the maximum sentence he could receive absent the agreement was twenty-four years. Thus, defendant knew the lengths of both the maximum sentence and the agreed sentence. Therefore, we conclude that any inaccurate information defendant may have received from his counsel regarding the possible length of sentence did not render his consent to the sentence agreement involuntary.
>
> Accordingly, the trial court did not err when it denied defendant's Crim. P. 35(c) motion as it related to ineffective assistance of his postconviction counsel.

*Answer*, Appendix D, pp. 1-5 (citations omitted).

The appellate court fully addressed Claim Thirteen insofar as it alleges ineffective assistance based on sentencing counsel's advice to accept the sentence agreement in exchange for waiving a claim pursuant to <u>Brady</u> and insofar as ti alleges that sentencing counsel coerced the

petitioner to accept the sentence agreement by misinforming the petitioner of the possible sentence. The appellate court's resolution of these claims was not contrary to established federal law, nor did it result in an unreasonable determination of the facts presented in the state court proceeding. Factual determinations made by the state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The petitioner does not attempt to rebut any factual determinations made by the state court. Therefore, I find no basis upon which to grant the petitioner's Application with regard to this portion of Claim Thirteen. 28 U.S.C. § 2254(d).

### 2. Ineffective Assistance Based on Sentencing Counsel's Failure to Seek Appellate Review of the Sentence Agreement

The appellate court did not directly address Claim Thirteen insofar as it alleges that sentencing counsel was ineffective because he failed to seek appellate review of the sentence agreement.[2] However, the appellate court stated that the petitioner "did not present any other evidence to the Crim. P. 35(c) court that would show that his postconviction counsel's conduct was below the level of reasonably competent assistance."

---

[2]The petitioner presented this claim to the state appellate court as follows:

> Further appellant's counsel was supose [sic] to file an appeal, since any waiver of a statutory right to appeal is supose [sic] to be reviewed de novo anyway.

15

I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." Id. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." Id.

The petitioner cites United States v. Bolinger, 940, F.2d 478, 479 (9th Cir. 1991), to support his assertion that sentencing counsel was "suppose [sic] to file a [sic] appeal so the appellate courts could review the deal since all waivers of appeal are to be reviewed de novo by the appellate courts." *Application*, sixteenth consecutive page.

In setting forth its standard of review, the Bolinger court stated "[w]hether the appellant waived his statutory right to appeal is a matter of law we review de novo." 940 F.2d at 479. Apparently, the petitioner has taken this statement to mean that all waivers of appeal are to be reviewed by the appellate court. To the contrary, Bolinger states that a waiver of the right to appeal is valid if knowingly and voluntarily made. Id. at 479-80.

Here, the state appellate court has determined that the petitioner intelligently and knowingly entered into a sentence agreement whereby he waived his right to appeal. *Answer*, Appendix D, p. 7. Consequently, sentencing counsel's failure to appeal the waiver does not constitute ineffective assistance of counsel. I find no basis upon which to grant the petitioner's Application with regard to this claim.

16

### C. Claims One through Twelve

Claims One through Twelve challenge the assault conviction. The respondents assert that Claims One through Twelve have not been exhausted in state court.

The petitioner asserted 20 claims in the appeal of the denial of his motion for post-conviction relief. *Answer*, Appendix A. Claims One through Seventeen of the petitioner's appeal are the same as Claims One through Twelve of the Application. The Colorado Court of Appeals declined to reach the merits of these claims because it found that the petitioner had voluntarily entered into the sentence agreement and waiver of his appellate rights, and therefore waived his right to consideration of these claims. Id. at Appendix D, pp. 7-8.

When a state court declines to address a prisoner's claim because the claim is procedurally barred, the claim is procedurally defaulted in a federal habeas proceeding. See Coleman, 501 U.S. 722, 729-30 (1991). Here, the state court unequivocally concluded that the petitioner was procedurally barred from bringing these claims.

I may not consider issues raised in a habeas petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can show either (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that a failure of this court to consider the claims will result in a fundamental miscarriage of justice. English v. Cody, 146 F.3d 1257, 1259 (10th Cir.1998) (citing Coleman, 501 U.S. at 749-50); Steele v. Young, 11 F.3d 1518, 1521 (10th Cir.1993). The petitioner has not argued cause and prejudice or fundamental miscarriage of justice. Consequently, Claims One through Twelve are not proper for consideration on an application for writ of habeas corpus.

## IV.  CONCLUSION

I respectfully RECOMMEND that the Application be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated March 13, 2006.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge